UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SIERRA A LAUNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01990-SEB-DML |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Sierra A. Launer is not disabled.

## **Introduction**

Ms. Launer applied on March 6, 2012, for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since February 11, 2010. Acting for the Commissioner of the Social Security Administration following a hearing on September 9, 2013, an administrative law judge ("ALJ") found that Ms. Launer is not disabled. The Appeals Council denied review of the ALJ's decision on October 31, 2014, rendering the ALJ's decision for

the Commissioner final. Ms. Launer timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Launer contends the ALJ failed to address Social Security Ruling ("SSR") 85-15 and consider the effects of stress in the workplace on her. In addition, Ms. Launer argues the ALJ should have sought the assistance of a medical expert to address Ms. Launer's impairments.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Launer's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Ms. Launer is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### Analysis

**I.      Substantial evidence supports the ALJ's step three decision.**

Ms. Launer argues that the ALJ erred in his Step Three decision by deciding that Ms. Launer's impairments did not meet or medically equal Listings 3.02A (chronic obstructive pulmonary disease), 14.08 (human immunodeficiency virus), and 12.02, 12.08, and 12.09 (organic mental disorders, personality disorders, and substance addiction disorders). According to Ms. Launer, "the ALJ is lacking the medical training and knowledge to interpret the medical records and make [his] own judgments." She argues that the ALJ should have sought the opinion of a medical expert as to whether Ms. Launer's impairments equaled a listing. Although it is far from clear in her brief, it appears the crux of Ms. Launer's argument is that additional medical evidence post-dating the Disability Determination Forms required the ALJ to have a medical expert testify at the hearing on the issue of medical equivalence.

The ALJ bears responsibility for deciding medical equivalence for cases at the hearing level. 20 C.F.R. § 416.926(e). While "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight" (SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)), Disability Determination and Transmittal Forms "conclusively establish that 'consideration by a physician [or psychologist] designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (internal citations

5

omitted); *see also* SSR 96-6p, 1996 WL 374180, at *3. "Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review." SSR 96-6p, 1996 WL 374180, at *3.

While Ms. Launer maintains that "the ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State Agency medical consultant's finding that the impairment(s) was not equivalent to any impairment in the Listing of Impairments," this summation omits a significant provision of the standard set forth in the relevant Social Security Ruling. The ALJ is required to receive an updated medical opinion from a medical expert "[w]hen additional evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-4 (emphasis added). *See also Buckhanon v. Astrue*, 368 F. Appx. 674, 679 (7th Cir. 2010).

Here, two Disability Determination and Transmittal (DDT) Forms, dated May 24, 2012 and August 2, 2012, stated that Ms. Launer was not disabled.[1] (R.

---

[1] Both transmittal forms contain a code of "N32" in Item 22. This code is to reflect the "nature of the allowance or denial at the time of adjudication." POMS DI 26510.045, *available at:* https://secure.ssa.gov/poms.nsf/lnx/0426510045. The code of "N32" means that the basis of the decision is that the applicant has the capacity

6

114-115). The first DDT references a Medical Evaluation/Case Analysis by Dr. Mark Ruiz, M.D., dated May 24, 2012, and the Mental RFC conducted by Dr. B. Randal Horton, Psy. D., dated May 21, 2012.[2] The second DDT form references the Medical Evaluation/Case Analysis by Dr. Michael Brill, M.D., on August 2, 2012, as well as the Medical Evaluation/Case Analysis by Dr. William Shipley, Ph.D., on August 2, 2012.

Approximately 24 pages of medical records post-date the review and determination by the state agency consultants. (R. 310-334). At the hearing, counsel for Ms. Launer directed the ALJ to a single page in the medical records that counsel believed "might establish a meets or equals listing in 14.08D3, possibly A . . . ." (R. 63). This page contains a single reference in the Past Medical History section to "herpes zoster,[3] multiple dermatomes,[4] right, with post-herpetic neuralgia."[5] (R. 333). This page also includes a notation in the Interval History

---

for significant gainful activity other than relevant past work or has the capacity for significant gainful activity but does not have a work history. *See id.*
[2] A Psychiatric Review Technique Form was also completed by Dr. Horton and dated May 21, 2012. (R. 290-303).
[3] Herpes zoster is more commonly known as shingles. CDC, Shingles (Herpes Zoster), Signs & Symptoms, http://www.cdc.gov/shingles/about/symptoms.html (last visited Jan. 21, 2016).
[4] A dermatome is defined as "an area of skin that is mainly supplied by a single nerve coming out of the spine." Montana Department of Public Health and Human Services, Health Guidelines, Shingles (Herpes zoster), *available at*: https://dphhs.mt.gov/Portals/85/dsd/documents/DDP/MedicalDirector/Shingles.pdf.
[5] Postherpetic neuralgia is "persistent pain in the area where the rash once was." CDC, Shingles (Herpes Zoster), Clinical Overview, http://www.cdc.gov/shingles/hcp/clinical-overview.html (last visited Jan. 21, 2016).

section that Ms. Launer "was . . . started on Acyclovir prophylaxis for symptoms of post-herpetic neuralgia." (*Id.*).

To meet listing 14.08 (human immunodeficiency virus), the claimant must have documentation as described in 14.00F and one of the infections or conditions enumerated in the listing. Listing 14.08D(3) requires herpes zoster: (a) disseminated or (b) with multidermatomal eruptions that are resistant to treatment. The isolated reference in Ms. Launer's medical record does not say the herpes zoster was disseminated or that it was resistant to treatment. The ALJ concluded that the evidence did not show herpes zoster with disseminated infection or multidermatomal eruptions that are resistant to treatment. (R. 24). The ALJ stated, "Regardless of the claimant's use of Acyclovir prophylaxis for symptoms of post-herpetic neuralgia, there is no indication that such symptoms are recurrent, expansive, or progressive." (*Id.*).

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Although the ALJ "bear[s] some responsibility for developing the administrative record . . . [the ALJ is] also free to assume that a claimant represented by counsel has presented her strongest case for benefits . . . ." *Buckhanon*, 368 F. Appx. at 679. Ms. Launer knew in 2012 that the state-agency consultants did not think she was disabled. Ms. Launer, represented by counsel, never presented an opinion on medical equivalence, nor did she ask the ALJ to recontact the state agency consultants. At the same time, however, Ms. Launer was gathering other evidence

for the record.[6] In these circumstances, the inference is that Ms. Launer decided another expert opinion would not help her. *Id.* (court could not conclude ALJ erred or "any putative error was harmful;" ALJ expressly relied on medical judgment of state agency consultants and claimant's medical providers remained silent on question of medical equivalence). Nor does Ms. Launer's brief address the criteria under Listings 3.02A, 14.08, 12.02, 12.08, and 12.09 or cite any evidence that supports a finding those listings were met or equaled. Ms. Launer had the opportunity to alert the court to any such evidence in response to the arguments raised by the Commissioner's brief, but she chose not to file a reply brief.

Under these circumstances, the ALJ did not err by failing to summon a medical expert to testify at the hearing. Furthermore, the ALJ considered and rejected Listings 3.02A, 14.08, 12.02, 12.08, and 12.09, and he explained his reasons for doing so. Because they are supported by substantial evidence, the court finds no error.

## II. The ALJ properly addressed Ms. Launer's mental limitations.

Ms. Launer raises one error in the ALJ's evaluation of appropriate restrictions in the RFC based on her mental impairments. She claims an opinion by

---

[6] Ms. Launer requested a hearing by an ALJ on September 19, 2012. (R. 134-35). At that time, Ms. Launer stated she had no additional evidence to submit. (R. 135). The Request for Hearing Acknowledgement Letter, dated October 2, 2012, contained a section on "Providing Additional Evidence" requesting the claimant provide additional evidence as soon as possible. (R. 167). The Notice of Hearing, dated July 8, 2013, informed Ms. Launer that she could submit additional evidence for the ALJ to consider, even bringing it to the hearing if she could not submit it in advance. (R. 140). The medical records post-dating the review and determination by the state agency consultants have print and/or facsimile transmission dates of July 22, 2013 (R. 311-22) or August 30, 2013 (R. 333-34). The hearing was held on September 9, 2013. (R. 21).

9

Dr. Paul Lysaker, who conducted a mental status examination, was not properly evaluated. Asserting that Dr. Lysaker found she "does not act appropriately when distressed," Ms. Launer argues that the ALJ merely cited Dr. Lysaker's finding and "fail[ed] to address the implications of this finding on the workplace." Relying on SSR 85-15 and a decision by the First Circuit Court of Appeals, Ms. Launer contends that remand is warranted.

At the outset, Ms. Launer mischaracterizes the evidence in the record. Contrary to Ms. Launer's representation, Dr. Lysaker's opinion actually states as follows:

> The claimant was observed to be able to interact appropriately with the interviewer and *is likely to be able to interact appropriately with coworkers, supervisors, and the public, and should be able to handle routine changes found in the workplace*. Of note, she may feel comfortable not acting appropriately when distressed *but she appears nevertheless capable of acting appropriately should she choose to impose that behavior on herself*.

(R. 277) (emphasis added). Furthermore, the ALJ did not simply "cite" Dr. Lysaker's opinion. He discussed Dr. Lysaker's opinion in detail in a number of places in his decision. (*See* R. 24-25, 28-30.)

The First Circuit authority cited by Ms. Launer is unavailing. In addition to being factually distinguishable in other respects, no fewer than three doctors had determined that Mr. Lancellotta, the claimant in that case, was "totally incapacitated as a result of anxiety." *Lancellotta v. Sec'y of H.H.S.*, 806 F.2d 284, 285 (1st Cir. 1986). An impartial medical advisor testified that Mr. Lancellotta could perform non-stressful work activity. *Id.* The First Circuit vacated and

remanded because, in the absence of "an evaluation of Lancellotta's vocational abilities in light of his anxiety disorder, there [was] no basis for the ALJ's conclusion that he can perform low stress work" – especially where even the impartial medical advisor testified only that Mr. Lancellotta was capable of performing *non*-stressful work. *Id.* at 285-86.

There is no such evidence in the record here. As the ALJ noted, "[b]oth psychological examiners felt the claimant would be able to interact appropriately with coworkers, supervisors, and the public." (R. 24) (internal citations omitted). While Ms. Launer points to statements she made to Dr. Lysaker regarding her symptoms during the examination to further support her argument (R. 273), it is clear that Dr. Lysaker considered this information in his opinion. (R. 277). And even though the state agency doctor's Mental Residual Functional Capacity Assessment found Ms. Launer was not significantly limited in social interaction or adaptation, the ALJ's RFC limited Ms. Launer, in pertinent part, to "no more than brief and superficial interaction with the public, coworkers or supervisors." (R. 25). According to the ALJ, Ms. Launer's RFC was "consistent with, although somewhat *more restrictive* than, the opinions of the physicians with Disability Determination Services . . . Dr. Fink . . . and Dr. Lysaker." (R. 30) (emphasis added) (internal citations omitted).

SSR 85-15 is titled, "Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments." The ALJ cited SSR 85-15 in his Step 5 discussion. (R. 31). As SSR

11

85-15 states, the section on stress and mental illness "is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis." 1985 WL 56857, at *5 (1985). "Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." (*Id.* at *6). Considering Ms. Launer's mental impairments, the ALJ restricted Ms. Launer to "work involving superficial interaction with the public, coworkers, and supervisors." (R. 29). Ms. Launer has not identified how or why the ALJ's limitations in the RFC did not sufficiently address her mental limitations, nor has she offered any additional limitations that should have been included in the RFC.

The court may not reweigh the evidence, and Ms. Launer cannot point to any line of evidence that the ALJ failed to consider that decidedly detracts from his findings. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir. 2010).

## **Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Launer is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: February 3, 2016

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system

13